United States District Court
Southern District of Texas

**ENTERED**

October 08, 2020

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| LUIS ORTIZ SOLORZANO, *et al.* | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-19-3556 |
| | § | |
| ALPHONSE PASSAFIUME, *et al.*, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION DENYING DEFENDANTS' MOTION TO STRIKE
AND MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

This negligence case arises from a car accident between Luis Ortiz Solorzano and Alphonse Passafiume that occurred while Passafiume was driving for his employer, Riccelli Enterprises, Inc. Passafiume moved to strike Solorzano's designation of nonretained medical experts. He argued that Solorzano did not properly and timely designate his experts under Federal Rule of Civil Procedure 26(a)(2)(C). Passafiume simultaneously moved for summary judgment, arguing that if Solorzano's medical experts were excluded, he could not prevail, as a matter of law. The day after receiving Passafiume's motions, Solorzano filed supplemental expert designations. (Docket Entry No. 20). After oral argument on Passafiume's motions, the court allowed Solorzano to file a second set of supplemental designations. (Docket Entry No. 33).

Passafiume and Riccelli also moved for partial summary judgment, arguing that Solorzano lacked evidence for his gross-negligence claim against Passafiume and Riccelli and for all but one of his direct-negligence claims against Riccelli.

Based on careful consideration of the motions and responses, the record, and the applicable law, the court denies Passafiume's motion to strike Solorzano's expert designations and denies the

motion for summary judgment against Solorzano.  The court grants Passafiume and Riccelli's motion for partial summary judgment.  The reasons for these rulings are explained below.

## I.      The Motion to Strike

Solorzano designated 18 nonretained medical experts, all treating physicians or healthcare providers, to testify about causation, damages, and the reasonableness of medical expenses. (Docket Entry No. 12).  Solorzano submitted these designations before the court's deadline for expert-witness designations.  (Docket Entry Nos. 9, 12, 15).

Each of Solorzano's treating-physician and healthcare-provider experts was initially designated to testify about the same subject matter:

> This non-retained expert may testify regarding the injuries sustained by Plaintiff in the incident made the subject of this suit, their treatment, medical diagnosis, prognosis, and the reasonable and necessary costs of hospital, doctor and medical bills for treatment of Plaintiff's injuries in the past and in the future. The opinions to which this non-retained expert is expected to testify are contained in Plaintiff's medical records from this healthcare provider, and include the opinions set forth below. The factual bases for these opinions include facts documented in Plaintiff's medical records from this healthcare provider, as well as the expert's knowledge, education, and experience.

(Docket Entry No. 12 at 2).

Solorzano's designations provided a list of documents as the factual basis for, and sources of, each expert's opinion.  The list included all "of the medical records of Plaintiffs produced in this cause," all the "depositions taken, and hereafter taken, in this cause, either by written questions or orally, and all exhibits thereto," the "expert reports herein above expressly referred to," all "witness statements which may be produced in this cause," all "the photographs and videotape recordings produced in this cause," the "Responses to Requests For Disclosure, Responses to Requests For Production, Answers to Interrogatories, and the Amendments and Supplements thereto which have been filed by each of the parties in this cause of action," the "Pleadings on file in this cause of action," and all "documents and tangible things produced in this cause."  (*Id.* at 8).

Months after receiving the designations, and the week after discovery had closed, Passafiume moved to strike Solorzano's expert designations for failure to comply with Rule 26(a)(2)(C). (Docket Entry No. 17). Assuming that the court would grant this motion, Passafiume simultaneously moved for summary judgment. (Docket Entry No. 18).

The next day, Solorzano filed supplemental expert designations. (Docket Entry No. 20). Shortly thereafter, he responded to the motion to strike and motion for summary judgment. (Docket Entry Nos. 23, 24). In his supplemental designations, Solorzano added three pages outlining the factual basis for each expert's opinion. (Docket Entry No. 20 at 7–10). This new section detailed Solorzano's medical complaints after the accident, the diagnoses he received, the treatments he was prescribed, and the results. (*Id.*).

After oral argument on Passafiume's motion to strike, the court allowed Solorzano to file a second set of supplemental expert designations, (Docket Entry No. 33), which Solorzano promptly filed, (Docket Entry No. 34). This set of designations is over 50 pages long. For each expert, the designation summarizes the expected subject matter and opinions of the expert, as well as the facts underlying those opinions. (*Id.*). The designations also identify specific medical records that provide further information about each expert's opinion. (*See, e.g.*, Docket Entry No. 34 at 4–5). For example, Solorzano disclosed the factual basis for one expert's opinion as including, among other things, the date Solorzano arrived, the types of pain he was feeling, and his medical history:

> i. Plaintiffs presented to the hospital on the date of the incident;
> j. Plaintiff Vinicio Ortiz complained of neck and lower back pain, as well as headaches. He stated the right side of his face hit the window. He described his pain as sharp and constant;
> k. Plaintiff Ortiz-Solórzano complained of neck, upper back, lower back, left shoulder, and left arm pain;
> l. Plaintiffs' complaints were corroborated by physical assessment;

m. The collision was a high impact velocity with an estimated speed of 60 miles per hour;

n. There are no pre-existing injuries that could, in reasonable medical probability, account for the pain experienced by Plaintiffs post-collision. Based on the history reported by Plaintiffs, the only reported prior surgery was for inguinal hernia, which was reported by Plaintiff Vinicio Ortiz.

(*Id.* at 4).  He also identified portions of specific medical records underlying his opinion:

a. Plaintiffs' medical records from AD Hospital East that were previously produced in this cause as Ortiz 18-40 and Ortiz 457-474;

b. Plaintiffs' billing records from AD Hospital East that were previously produced in this cause as Ortiz 41 and Ortiz 475;

c. Plaintiffs' medical records from Chopra Imaging that were previously produced in this cause as Ortiz 42-50 and Ortiz 479-481;

d. Plaintiffs' billing records from Chopra Imaging that were previously produced in this cause as Ortiz 51-57 and Ortiz 476-478;

e. Plaintiffs' medical records from Memorial MRI that were previously produced in this cause as Ortiz 104-105 and Ortiz 529-535;

f. Plaintiffs' billing records from Memorial MRI that were previously produced in this cause as Ortiz 103 and Ortiz 527-528.

(*Id.* at 4–5).  Solorzano clarified that "only a disclosed medical doctor will be presented to testify," not any supporting medical staff.  (*Id.* at 3 n.1).

Rule 26(a)(2)(C) governs the disclosures litigants must make before presenting a nonretained expert.  Under this rule, a party intending to present a nonretained expert must disclose "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify."  Fed. R. Civ. P. 26(a).  Designations under Rule 26(a)(2)(C) do not require "undue detail."  *Moore v. City of Houston*, No. 17-CV-2505, 2019 WL 8886239, at *3 (S.D. Tex. Nov. 12, 2019); *see also Everett Fin., Inc. v. Primary Residential Mortg., Inc.*, 2017 WL 90366, at *1–2 (N.D. Tex. Jan. 10, 2017) (summarizing cases); Fed. R. Civ. P. 26, Adv. Comm. Note (2010).  That said, "some specificity is required."  *Tolan v. Cotton*, No. 09-CV-1324, 2015 WL 5332171, at *5 (S.D. Tex. Sept. 14, 2015).

Under Rule 26(a)(2)(C), a nonretained expert, such as a treating physician, is not required to provide a written report.  Fed. R. Civ. P. 26(a)(2)(C).  All that is required is a summary of the

subject matter on which the expert will testify, the expert's opinions, and the underlying factual basis for those opinions. *Kemp v. City of Houston*, No. 10-CV-3111, 2013 WL 12320720, at *4 (S.D. Tex. July 24, 2013). The Advisory Committee Notes for the 2010 amendments to Rule 26(a)(2)(C) explain the different treatment for the designation of nonretained experts:

> Rule 26(a)(2)(C) is added to mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions. This disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B). Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have. . . . Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony.

Fed. R. Civ. P. 26, Adv. Comm. Note (2010).

Passfiume argues that Solorzano failed to provide a sufficiently detailed summary of the factual basis underlying each nonretained expert's opinion. (Docket Entry No. 17 at 5). Rule 26(a)(2)(C) requires the "summary of the facts" to contain "a brief account of facts—only those on which the expert actually relied in forming his or her opinions—that states the main points derived from a larger body of information." *Tolan*, 2015 WL 5332171, at *6. A mere "reference to a large body of information" does not qualify as a summary of facts. *Id.*

For example, in *Moore*, 2019 WL 8886239, at *4, the court held that the plaintiff's designations listing "medical records, discovery documents, and the pleadings" as the factual basis for the expert's opinion failed "to provide a brief statement of facts." Similarly, in *Williams v. Louisiana*, the court "rejected the notion that a disclosure solely of medical records is sufficient as a summary of the facts and opinions to which the witness is expected to testify." No. 14-CV-00154, 2015 WL 5438596, at *3 (M.D. La. Sept. 14, 2015) (collecting similar cases); *see also Knighton v. Lawrence*, No. 14-CV-718, 2016 WL 4250484, at *2 (W.D. Tex. Aug. 9, 2016).

Even if Solorzano's initial expert designations did not satisfy Rule 26(a)(2)(C), his supplemental designations are sufficient.  Unlike his initial designations, Solorzano's supplemental designations contain three to four pages detailing the opinions, subject matter, and factual basis for each expert's expected testimony.  (*See, e.g.*, Docket Entry No. 34 at 2–5).  These designations outline when Solorzano "presented to the hospital"; the initial pain he felt after the accident, including pain in his neck, back, and extremities; the pain he continued to feel after the collision; the diagnostic methods that his physicians used; a step-by-step breakdown of his treatment plan; and the results of his treatment.  (*Id.*).  Solorzano also identified particular portions of his medical records that would provide further information about the basis for each expert's opinion.  (*See, e.g.*, *id.* at 4–5).

These supplemental designations plainly satisfy the requirements of Rule 26(a)(2)(C). Solorzano's supplemental designations did not simply "dump a litany of medical records on the opposing party."  *Williams*, 2015 WL 5438596, at *3.  Instead, they provided an "abstract, abridgement, or compendium of the opinion and facts supporting the opinion," as required by Rule 26(a)(2)(C).  *Everett Fin., Inc.*, 2017 WL 90366, at *2 (quoting *Anders v. Hercules Offshore Servs., LLC*, 311 F.R.D. 161, 164 (E.D. La. 2015)).

While Solorzano's supplemental designations satisfy Rule 26(a)(2)(C), they were untimely.  When a party fails to comply timely with Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Courts look to four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose."  *Bitterroot Holdings, LLC v. MTGLQ Inv'rs, LP*,

648 F. App'x 414, 419 (5th Cir. 2016) (quoting *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003)).

The first factor weighs in favor of allowing Solorzano to file the supplemental designations. *See Bitterroot Holdings*, 648 F. App'x at 419 (the district court did not abuse its discretion in permitting evidence not timely disclosed under Rule 26 because the evidence was important to the case). The parties agree that testimony from Solorzano's treating physicians is crucial to his case. (Docket Entry No. 18 at 1; Docket Entry No. 23 at 7).

The second and third factors also weigh in Solorzano's favor. In determining if a party will be prejudiced by allowing an untimely designated expert to testify, courts examine the ability to prepare a defense and the time needed to prepare the case adequately. *Cont'l Cas. Co. v. F-Star Prop. Mgmt., Inc.*, No. 10-CV-102, 2011 WL 2887457, at *7 (W.D. Tex. July 15, 2011) (analyzing the effect a delay will have on the "schedule" set by the court and "the opponent's preparation"). A party cannot claim prejudice due to its own "inaction." *Atlas Imports, Inc. v. Atain Specialty Ins. Co.*, No. 18-CV-1115, 2020 WL 4574521, at *6 (S.D. Tex. June 10, 2020). In the context of treating physician designations, courts generally find "little, if any, prejudice" when a party clearly identifies the designated treating physician it plans to use as an expert and does so long before trial. *Smith v. Tangipahoa Par. Sch. Bd.*, No. 18-CV-6635, 2019 WL 3081954, at *2 (E.D. La. July 15, 2019); *see also Moore*, 2019 WL 8886239, at *4 ("[Defendant] has known for at least ten months that the [n]on-retained Experts could be called to testify about their treatment of [plaintiff's] injuries.").

Passfiume will not be unduly prejudiced if Solorzano's experts testify. The court allowed Solorzano to file supplemental expert designations by September 25, 2020, which he did. (Docket Entry Nos. 33, 34). The court had to cancel the docket call scheduled for September 24, 2020, due

7

to the COVID-19 pandemic.  The pandemic has already effectively resulted in a continuance. Discovery is reopened until November 20, 2020, for the limited purpose of deposing Solorzano's designated experts, if desired.  The mediation deadline is also reset for November 20, 2020.  The joint pretrial order is due by January 22, 2021, and docket call is moved to January 29, 2021.  This is sufficient time for Passafiume to prepare his defense.  *See Smith*, 2019 WL 3081954, at *2 (two months was enough time to a prepare defense); *Hudson Henley Grp. v. Love Ins. Grp. LLC*, No. 3:15-CV-3078, 2018 WL 1631143, at *7 (N.D. Tex. Apr. 4, 2018) (no prejudice when the "[plaintiff] timely filed [the expert's] supplemental expert disclosure nearly two months before the trial was set.").

The final factor favors Passafiume.  Solorzano explains that his deficient designation was a mistake; he thought it was sufficient.  While the rule is clear that a summary of the factual basis for each expert's opinion is required in a Rule 26(a)(2)(C) designation, Solorzano promptly corrected the mistake once notified.

Together, the factors weigh in favor of denying Passafiume's motion to strike.  The amended scheduling order that allows Passafiume to depose Solorzano's designated experts is also entered.  *Jacobs v. Tapscott*, No. 3:04-CV-1968, 2006 WL 2728827, at *14 (N.D. Tex. Sept. 25, 2006).

## II.     The Motion for Summary Judgment Against Solorzano

### A.     The Evidentiary Objections

Passafiume objected to Solorzano's summary-judgment evidence, arguing that it is inadmissible and cannot support his claims.  (Docket Entry No. 30).  First, he argues that Solorzano's medical and billing records are inadmissible because they are hearsay and Solorzano did not properly authenticate them.  (*Id.* at 5).  Second, he argues that Solorzano did not submit

8

competent evidence of "future medical expenses, past or future pain and suffering, past or future mental anguish, past or future physical impairment, past or future disfigurement, or loss of earnings or earning capacity." (*Id.* at 6).  Neither argument is persuasive.

Under Rule 56(c)(2), a party can object to evidence cited in summary judgment papers if it "cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Though the content of the evidence must be admissible, "the material may be presented in a form that would not, in itself, be admissible at trial."  *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017).  To authenticate a document, a party need only present some proof "to support a finding that the evidence in question is what its proponent claims it to be."  Fed. R. Evid. 901.  This proof does not need to be "conclusive."  *In re McLain*, 516 F.3d 301, 308 (5th Cir. 2008).

Solorzano submitted evidence authenticating his medical and billing records.  Along with these records, Solorzano submitted sworn affidavits from custodians at each treating facility he visited.  (*See, e.g.*, Docket Entry No. 24-4 at 1, 5, 15).  The treating physicians he designated as experts are the same ones listed on the disputed medical records.  (*Compare id.* at 14, *with* Docket Entry No. 20 at 3).  The affidavits from custodians of records and the designations of the treating physicians are enough to authenticate Solorzano's medical records at summary judgment.  *See, e.g.*, *Luna v. Macy's S., Inc.*, No. 17-CV-1759, 2018 WL 3609053, at *3 (S.D. Tex. July 27, 2018) (overruling objections to medical records when the plaintiff submitted "an affidavit from the records custodian authenticating" them); *Duncan v. Univ. of Tex. Health Sci. Ctr. Hou.*, No. 09-CV-0715, 2010 WL 11519300, at *8 (S.D. Tex. Dec. 10, 2010) (considering medical records from a treating physician when supported by an affidavit from a custodian of records); *see also Flores*

*v. Harris*, No. 17-CV-3817, 2019 WL 1426313, at *9 (S.D. Tex. Mar. 29, 2019) (striking medical records because the plaintiff did not submit "an affidavit authenticating the records").

Passafiume also claims that Solorzano's medical and billing records contain hearsay.  But he does not point to any specific statements or portions of the documents that should be stricken. Under Federal Rule of Evidence 103(a)(1), any "[e]videntiary objections must be specific." *United States v. Avants*, 367 F.3d 433, 445 (5th Cir. 2004).  Without identifying "any particular statements" as hearsay, Passafiume's "objections do not meet the specificity requirement of Rule 103(a)(1)." *Duncan*, 2010 WL 11519300, at *8; *Walker v. Neighborhood Centers, Inc.*, No. 4:15-CV-2890, 2017 WL 5654756, at *4 (S.D. Tex. Mar. 8, 2017) ("Plaintiff's general objection to Defendant's affidavits is too broad to be properly considered by the Court."); *Gotch v. UPS Ground Freight, Inc.*, No. 13-CV-375, 2014 WL 4071573, at *1 (S.D. Tex. July 25, 2014) ("Plaintiff's vague objection that the [declaration] 'contains facts not supported by admissible evidence' does not identify the specific facts to which Plaintiff objects and is therefore OVERRULED.").  Passafiume also offers no case law to support the notion that the conclusions of Solorzano's "treating physicians constitute inadmissible evidence." *Seaman v. C.S.P.H., Inc.*, No. 96-CV-2165, 1997 WL 538751, at *11 (N.D. Tex. Aug. 25, 1997).

Passafiume next argues that Solorzano's lay testimony cannot support his claims for "future medical expenses, past or future pain and suffering, past or future mental anguish, past or future physical impairment, past or future disfigurement, or loss of earnings or earning capacity." (Docket Entry No. 30 at 6).  Solorzano's treating-physician experts will testify about "the existence, nature and/or extent of the disabilities and/or incapacities of Plaintiffs in the past, and the reasonable probability and extent of the disabilities and/or incapacities which Plaintiffs will suffer from in the future"; "medical care and treatment and medications that will be required by

Plaintiffs in the future"; and "the reasonableness and the necessity of the medical services and medical care and medications rendered to Plaintiffs in the past, and that they will in reasonable probability receive in the future."  (Docket Entry No. 20 at 6).  These experts will address future medical expenses, past or future pain and suffering, past or future physical impairment, and past or future disfigurement.

To support his claims for mental anguish and lost earnings and earning capacity, Solorzano presented his own affidavit.[1]  On summary judgment, Solorzano is permitted to use his affidavit to support his claim for mental anguish.  *See McCaig*, 788 F.3d at 482 ("Expert testimony is not required to show compensable mental anguish, which may be proven by the claimants' own testimony." (internal quotation marks and citation omitted)).  Solorzano is also permitted to use his affidavit and the testimony of his designated experts to support his claim for lost earnings and earning capacity.  *See St. Elizabeth Hosp. v. Graham*, 883 S.W.2d 433, 440 (Tex. App.— Beaumont 1994, pet. denied) (upholding a jury verdict on lost earnings because the plaintiff presented "expert medical evidence as well as lay witnesses").

Passafiume also attacks Solorzano's affidavit as "a sham" because it conflicts with his prior deposition testimony.  A court can refuse to consider a "sham affidavit" if it contradicts a witness's "prior testimony."  *Hacienda Records, LP v. Ramos*, 718 F. App'x 223, 235 (5th Cir. 2018).  This rule prevents a party from manufacturing a "dispute of fact merely to defeat a motion for summary judgment."  *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000).

---

[1] In diversity cases, federal courts addressing state law claims "refer to state law for the *kind* of evidence that must be produced to support a verdict."  *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir. 2004) (emphasis added); *see also Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 398 (5th Cir. 2013) ("The law governing what damages are recoverable is substantive, and therefore in a diversity case state law governs what damages are available for a given claim and the manner in which those damages must be proved.").  Solorzano brings only Texas state law tort claims.  (Docket Entry No. 11).  Texas law governs what he "must prove and how it may be proved."  *McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 482 (5th Cir. 2015).

Solorzano's affidavit does not contradict his deposition testimony. In his deposition, he said at one point that he did not have "any problem" doing his job, (Docket Entry No. 24-2 at 20), but he also made clear that he had "lost strength" and could not lift "heavy things," (*id.* at 54). In his affidavit, he reiterated that he could not lift "heavy items," and he experienced pain when he worked without taking a break. (Docket Entry No. 24-4 at 1). Solorzano's deposition and affidavit do not conflict so as to trigger the sham affidavit rule. *See EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 612 n.3 (5th Cir. 2009) (reversing summary judgment and noting that the "very fact . . . the magistrate judge questioned [the witness] about perceived discrepancies between her deposition and affidavit tends to indicate that the . . . judge was weighing evidence and resolving conflicts in the summary judgment evidence, and failing to give the plaintiff the benefit of all favorable inferences that could be drawn").

The court overrules Passafiume's objections to Solorzano's summary judgment evidence.

### B.      The Summary Judgment Motion

Passafiume filed a motion for summary judgment along with his motion to strike. (Docket Entry No. 18). He argued that if Solorzano's expert designations were stricken, Solorzano could not present evidence on causation, damages, and the reasonableness of medical expenses. (*Id.* at 5, 11–14).

Because the court has denied Passafiume's motion to strike and overruled his objections to Solorzano's summary-judgment evidence, the court also denies his motion for summary judgment.

## II.      The Motion for Partial Summary Judgment

Passafiume and Riccelli also moved for partial summary judgment on Solorzano's gross-negligence claims against both Passafiume and Riccelli, and on his negligent-entrustment, hiring, supervision, training, and retention claims against Riccelli. (Docket Entry No. 19). Solorzano

admits that he does not have evidence to sustain his gross-negligence and negligent-entrustment, hiring, supervision, and retention claims.  (Docket Entry No. 24 at 20).  The court grants summary judgment for Passafiume and Riccelli on the gross-negligence claim and for Riccelli on the negligent-entrustment, hiring, supervision, and retention claims.  The only disputed claim is against Riccelli for negligent training.

Negligent training, like negligent entrustment and hiring, requires proof that the defendant employer hired "an incompetent employee who the employer knew or, in the exercise of ordinary care, should have known was incompetent or unfit, and thereby creating an unreasonable risk of harm to others."  *Law Firm of Donald Wochna, LLC v. Am. Frontier Mgmt., LLC*, No. 03-17-00489-CV, 2018 WL 1614782, at *6 (Tex. App.—Austin Apr. 4, 2018, pet. denied) (quoting *Ogg v. Dillard's Inc.*, 239 S.W.3d 409, 420 (Tex. App.—Dallas 2007, pet. denied)); *see also Douglas v. Hardy*, 600 S.W.3d 358, 367 (Tex. App.—Tyler 2019, no pet.).  Passafiume provided evidence that he had a valid commercial driver's license.  (Docket Entry No. 19 at 6).  The evidence also shows that, before hiring Passafiume, Riccelli required him to pass an on-the-road driving test and ran several background checks, all of which showed a clean driving record.  (*Id.* at 6–8); *see also Batte v. Hendricks*, 137 S.W.3d 790, 791 (Tex. App.—Dallas 2004, pet. denied) ("The possession of a valid, unrestricted driver's license is evidence of a driver's competency absent any evidence to the contrary.").  Riccelli submitted evidence showing that it monitored Passafiume's driving record and provided him with annual safety seminars.  (Docket Entry No. 19 at 7); *Onofre v. C.R. England, Inc.*, No. 15-CV-00425, 2016 WL 3406196, at *5 (W.D. Tex. June 17, 2016) (granting summary judgment because the plaintiff presented "no evidence . . . that [the defendant's] training or post-training evaluations were inadequate, or that a reasonably prudent employer would have provided further training").

Solorzano has not pointed to evidence of intervening accidents or citations that would or should have alerted Riccelli to problems with Passafiume's driving training.  Solorzano admitted that he does not have evidence to sustain his negligent-supervision, entrustment, and hiring claims. (Docket Entry No. 24 at 20).  His negligent-training claim fails as well.

## III.    Conclusion

Passafiume's motion to strike, (Docket Entry No. 17), and motion for summary judgment, (Docket Entry No. 18), are denied.  Passafiume and Riccelli's motion for partial summary judgment, (Docket Entry No. 19), is granted.

SIGNED on October 8, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge